**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


FRANCESCO DIDIANO,              :
                                :   Civil Action No. 09-2315 (FLW)
          Petitioner,           :
                                :
     v.                         :   OPINION
                                :
KAREN BALICKI,                  :
                                :
          Respondent.           :
```

**APPEARANCES**:

| | |
|---|---|
| Petitioner <u>pro se</u> | Counsel for Respondent |
| Francesco Didiano | Carey J. Huff |
| South Woods State Prison | Assistant Prosecutor |
| 215 Burlington Road South | Monmouth Co. Prosecutor Ofc. |
| Bordentown, NJ 08302 | Monmouth Co. Court House |
| | 71 Monument Park |
| | Freehold, NJ 07728 |

**WOLFSON**, District Judge

Petitioner Francesco Didiano, a prisoner currently confined at South Woods State Prison in Boredentown, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is Warden Karen Balicki.

For the reasons stated herein, the Petition must be dismissed with prejudice.

I. BACKGROUND

A. Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> Defendant forcibly raped his wife, Mary Piccirillo from whom he was separated and awaiting a divorce. Defendant claimed that it was consensual sex. By its verdict, the jury obviously found his now former wife a credible witness and disbelieved defendant's version of the events.
>
> The testimony may be briefly capsulized as follows. Mary Piccirillo first met defendant in January 1987. They married in New Jersey in June 1994, and had a child together. The couple moved to Florida in October1996, and had their second child the following month.
>
> While in Florida, Piccirillo and defendant were arrested for theft. Only Piccirillo was convicted and she was sent to prison in March 1997. On October 24, 1997, Piccirillo attempted by herself to file for divorce from defendant. On two separate occasions, March 13, and April 16, 1998, she had police try and serve defendant with the divorce papers at his home and at his place of employment, but was unsuccessful both times.
>
> Piccirillo was released from prison on May 6, 1998. Three days later, May 9, the Monmouth County Board of Welfare housed her in the Pan Am Motel in Eatontown. Piccirillo contacted defendant and told him she was staying at the motel. She called defendant to find out what his intentions were towards their

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

children who had been staying with Piccirillo's mother and sister since her 1997 incarceration.

 Defendant would sometimes visit Piccirillo at the motel but was forbidden by motel personnel from staying overnight because of a prior incident that had occurred when he was living there.  Even if defendant was not prohibited from spending the night, Piccirillo did not want him to stay with her overnight.  She was intent on divorcing him.  When authorities discovered where defendant was living, they served him with the divorce papers.

 Late at night on August 2, 1998, defendant drove up to the motel while his wife was making a telephone call from a pay phone downstairs and outside her motel room.  Defendant demanded to know to whom she was speaking.  He then accused her of talking to another man.  Although she tried to explain that it was only her female friend on the line, defendant became angry.

 Piccirillo was frightened and ran upstairs to her room where she tried to close the door behind her.  Defendant forcibly pushed the door open and entered her motel room.

 Defendant accused the victim of being an "Eatontown Whore" and that she was outside looking for someone.  Afraid and backing away from defendant, Piccirillo pleaded for defendant to leave.  He ignored her, throwing her down on the bed.  Holding both her hands down with one of his, defendant pulled up the victim's dress, unbuttoned his pants and dropped them to the floor with his free hand.  Piccirillo continued to protest, repeatedly telling him, "No, no, no" and to "please leave."  Using his free hand again, defendant ripped off Piccirillo's panties from the top elastic all the way down the side leg panel, and then forced her to have vaginal intercourse with him.

 Defendant ejaculated on his pants and shirt.  While pulling up his trousers he laughed and told the victim, "You're my wife, and your pussy will always belong to me whether or no we were together."

 The victim reported the crime the following day and was examined by a nurse practitioner through the "S.A.N.E." program at the Riverview Medical Center.

> Evidence of localized redness was noted on two external areas of the genitalia and two areas on the inside of the vagina.
>
> After defendant's arrest and waiver of his Miranda rights, he admitted to Detective Thomas Clayton of the Eatontown Police Department that he had called his wife a "ho," told her she should be in her room and questioned whether she was seeing anyone else. Defendant admitted that they "had sex." In answer to the detective's question whether the sex was consensual, defendant responded, "It's my wife."
>
> Defendant testified at trial and denied the charges. He claimed that when he confronted his wife about who she was speaking to on the telephone, he learned she was going to help friends she had met in jail. He "forbade" her to go to their assistance. According to defendant he asked the victim if she could "give him some sex," before she left, and she refused. He started to leave, but he returned when he saw that she was mad. He asked her what was wrong. She began running up the stairs and when she got half-way up, she asked him "what are you waiting for? You walk like an old man." Defendant then ran up after her and entered through the opened door. She began removing her underwear. Defendant said that she invited him into her room to have sex because she thought she was doing him a favor.

State v. Didiano, Docket No. A-6146-98T4 (N.J. Super. App. Div. Jan. 2, 2001) at 3-6.

B. Procedural History

Following a jury trial in the Superior Court of New Jersey, Law Division, Monmouth County, Petitioner was found guilty of aggravated sexual assault in violation of N.J.S.A. 2C:14-2a(3), sexual assault in violation of N.J.S.A. 2C:14-2c(1), and burglary in violation of N.J.S.A. 2C:18-2. By judgment entered July 9, 1999, he was sentenced to an aggregate sentence of 18 years'

imprisonment, ineligible for parole until he had served 85 percent of the sentence.

Petitioner timely appealed.  On January 2, 2001, the Superior Court of New Jersey, Appellate Division, affirmed the conviction but remanded so that the sexual assault conviction could be merged into the aggravated sexual assault conviction.  On February 26, 2001, the trial court entered an amended judgment, still sentencing Petitioner to an aggregate term of 18 years' imprisonment with an 85 percent parole disqualifier.  The Supreme Court of New Jersey denied certification on March 28, 2001.  State v. Didiano, 167 N.J. 637 (2001).

Petitioner filed his first state court petition for post-conviction relief on July 9, 2001.  The trial court denied relief by Order entered June 7, 2002.  On October 9, 2003, the Appellate Division affirmed the denial of relief.  The New Jersey Supreme Court denied certification on February 3, 2004.  State v. Didiano, 179 N.J. 309 (2004).

Petitioner filed his second state court petition for post-conviction relief on April 30, 2004.  The trial court denied Petitoiner's second state petition for post-conviction relief on September 24, 2004.  The Appellate Division dismissed Petitioner's appeal, for failure to prosecute, on September 29, 2005.

Petitioner filed his third state court petition for post-conviction relief on June 19, 2006.  The trial court dismissed the third state petition for post-conviction relief on August 21, 2006.  Petitioner did not appeal.

Petitioner filed his fourth state court petition for post-conviction relief on May 3, 2007.  The trial court denied this fourth state petition for post-conviction relief on May 2, 2008.  The Appellate Division dismissed Petitioner's appeal on March 6, 2009.

This Petition, dated May 3, 2009, followed.[2]  In the original letter-form Petition, Petitioner alleged, in the alternative, either that the prosecutor failed to provide to defense counsel the allegedly exculpatory statement of Debra Ann Parker, in violation of Brady v. Maryland, 373 U.S. 83 (1963), or that trial counsel knew of the statement and failed to provide effective assistance when he failed to call Ms. Parker as a defense witness.  Petitioner also asserted that trial counsel was ineffective for failing to introduce evidence of prior false

---

[2] Petitioner's pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

accusations by the victim, against Petitioner, that Petitioner participated in the theft that led to the victim's prior incarceration.  Petitioner also claimed that his first post-conviction relief counsel provided ineffective assistance by failing to discern whether the prosecutor failed to provide Ms. Parker's allegedly exculpatory statement or whether trial counsel had known of the statement and yet failed to call Ms. Parker as a witness.[3]  Petitioner also asserted that in 2003 he learned of a 1997 letter, written more than a year before the rape, in which the victim allegedly described herself as manipulative and deceitful, which he characterizes as "newly discovered evidence" that would have caused the jury to believe that the victim was lying about the rape.

Petitioner filed an Amended Petition on September 2, 2009. In the Amended Petition, Petitioner asserts ineffective assistance of trial counsel, for failure to secure certain witnesses, including Ms. Parker, who allegedly could provide exculpatory testimony.  Petitioner states that he first became aware of the exculpatory information, including Ms. Parker's statement to prosecutors, on or about November 6, 2002. Petitioner also asserts that the state court improperly denied

---

[3] Ineffective assistance of counsel in state post-conviction relief proceedings is not a ground for federal habeas relief. See 28 U.S.C. § 2254(i).

him an evidentiary hearing with respect to his claim of ineffective assistance of trial counsel.[4]

Respondent has answered that the Petition is time-barred and meritless. Petitioner has not filed a reply. This matter is now ready for determination.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

---

[4] The Court notes that errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. See, e.g., Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.1998), cert. denied, 526 U.S. 1065 (1999) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.... Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment."); Ferguson v. State, 1996 WL 1056727 (D.Del. 1996) and cases cited therein. Accordingly, Petitioner is not entitled to relief based on the state court's failure to afford him an evidentiary hearing with respect to his claim of ineffective assistance of trial counsel.

## III.  ANALYSIS

As noted above, Respondent asserts that the Petition must be dismissed as untimely.

The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d),[5] which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (c) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (d) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

---

[5] The limitations period is applied on a claim-by-claim basis.  See Fielder v. Verner, 379 F.3d 113 (3d Cir. 2004), cert. denied, 543 U.S. 1067 (2005); Sweger v. Chesney, 294 F.3d 506 (3d Cir. 2002).

Here, certain of Petitioner's claims were known to him at the time his conviction became final on June 26, 2001, ninety days following the denial of certification in his direct appeal, on March 28, 2001.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.  He alleges that others became known to him in November 2002 (when he first saw Ms. Parker's statement to prosecutors) or in 2003 (when he first saw the victim's letter describing herself as deceitful).  In any event, Petitioner knew of all of his claims by the end of 2003.

Thus, under the most generous calculation, evaluation of the timeliness of even the most recently-discovered claim in this § 2254 petition requires a determination of the period of time, after 2003, during which Petitioner's applications for state post-conviction relief were "properly filed" and "pending."

To statutorily toll the limitations period, a state petition for post-conviction relief must be "properly filed."

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by the appropriate court officer for placement into the official record.  And an application is "_properly_ filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.  In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally.  But in common usage, the question whether an application has been

10

> "properly filed" is quite separate from the question whether the claims <u>contained in the application</u> are meritorious and free of procedural bar.

<u>Artuz v. Bennett</u>, 531 U.S. 4, 8-9 (2000) (citations and footnote omitted) (finding that a petition was not "[im]properly filed" merely because it presented claims that were procedurally barred under New York law on the grounds that they were previously determined on the merits upon an appeal from the judgment of conviction or that they could have been raised on direct appeal but were not).

Where a state court has rejected a petition for post-conviction relief as untimely, however, it was not "properly filed" and the petitioner is not entitled to statutory tolling under § 2244(d)(2). <u>Pace v. Diguglielmo</u>, 544 U.S. 408 (2005). This is so even where, in the alternative, the state court addresses the merits of the petition in addition to finding it untimely. <u>Carey v. Saffold</u>, 536 U.S. 214, 225-26 (2002).

An application for state post-conviction relief is considered "pending" within the meaning of § 2244(d)(2), and the limitations period is statutorily tolled from the time it is "properly filed," during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, <u>Carey v. Saffold</u>, 536 U.S. 214 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, <u>Swartz v. Meyers</u>, 204 F.3d at 420-24. However, "the time

11

during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2)." Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001).

The limitations period of § 2244(d) also is subject to equitable tolling. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998). Equitable tolling applies

> only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient.

Miller, 145 F.3d at 618-19 (citations and punctuation marks omitted). Among other circumstances, the Court of Appeals for the Third Circuit has held that equitable tolling may be appropriate "if the plaintiff has timely asserted his rights mistakenly in the wrong forum," i.e., if a petitioner has filed a timely but unexhausted federal habeas petition. Jones, 195 F.3d at 159. See also Duncan v. Walker, 533 U.S. 167, 183 (2001) (Stevens, J., joined by Souter, J., concurring in part) ("neither

the Court's narrow holding [that the limitations period is not statutorily tolled during the pendency of a premature federal habeas petition], nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petition as a matter of equity"); 533 U.S. at 192 (Breyer, J., dissenting, joined by Ginsburg, J.) (characterizing Justice Stevens's suggestion as "sound").  Here, Petitioner has alleged no circumstances that would give rise to a claim of equitable tolling.

Finally, "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).

Following these principles, the limitations period was already statutorily tolled, during the pendency of his first state post-conviction relief proceeding, when Petitioner became aware of the last of his claims in 2003.  That tolling period expired on February 3, 2004, when the Supreme Court of New Jersey denied certification in the first state post-conviction relief proceeding.

Although Respondent asserts that the second, third, and fourth state post-conviction relief proceedings were not properly filed, and should not toll the limitations period, counsel has failed to provide the Court with documentation reflecting the

13

grounds for the denials and dismissals of the second and fourth state PCR petitions.  Accordingly, for purposes of this analysis, this Court will treat those state PCR petitions as "properly filed."  The third state PCR petition was dismissed for failure to comply with state procedural rules and, thus, was not properly filed.[6]  Nevertheless, even under this generous treatment, this Petition is untimely.

Specifically, 87 days elapsed between the date the first state PCR proceeding ended on February 23, 2004, and the date Petitioner filed his second state PCR petition on April 30, 2004. The second state PCR proceeding was pending until September 29, 2005, when the Appellate Division dismissed the appeal for failure to prosecute.  Thereafter, 582 days elapsed until Petitioner filed his fourth state PCR petition on May 3, 2007. The fourth state PCR proceeding was pending until the Appellate Division dismissed the appeal on March 6, 2009.  Thereafter, 58 days elapsed until this Petition was deemed filed on May 3, 2009. Thus, under the most generous possible calculation, 727 untolled days lapsed from the time Petitioner learned of the last of his claims until he filed this Petition.

---

[6] The third state PCR petition was dismissed for "specifically failing to: Append Certificate of Service R. 1:5-3, Original Form of Order not submitted R. 4:42-1(e), applicable by R. 3:1-4(a), Order must be included in every motion R. 1:6-2, Statement with affidavit/verification not attached. NJSA 2C:52-8, No date given R. 1:6-2A, no motion papers filed, only supporting brief."

Accordingly, the Petition must be dismissed with prejudice as untimely.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find this Court's procedural ruling debatable. Accordingly, no certificate of appealability shall issue.

### V.  CONCLUSION

For the reasons set forth above, the Petition must be dismissed with prejudice as untimely. No certificate of appealability shall issue. An appropriate order follows.

                                                  s/Freda L. Wolfson
                                                  Freda L. Wolfson
                                                  United States District Judge

Dated: April 29, 2010